## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DANIEL J. FREY | CIVIL ACTION |
| VERSUS | 16-489-JJB-EWD |
| BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND A & M COLLEGE | |

## RULING ON MOTION TO COMPEL

Before the court is a Motion to Compel Production of Income Tax Returns for Years 2015 and 2016 (the "Motion to Compel") filed by Board of Supervisors of Louisiana State University and A&M College and Louisiana State University Health Sciences Center – New Orleans ("LSU").[1] Plaintiff, Daniel J. Frey ("Plaintiff"), has filed an opposition[2] and LSU has filed a Reply.[3] On November 11, 2017, a telephone conference with the parties was held and counsel were given the opportunity to discuss the Motion to Compel. Following that conference, the court instructed that it would issue a written ruling on the Motion to Compel. For the reasons set forth herein, the Motion to Compel is **DENIED**.[4]

---

[1] R. Doc. 22.

[2] R. Doc. 25.

[3] R. Doc. 28.

[4] A motion to compel is a nondispositive, pretrial discovery motion." *State Farm Mut. Auto. Ins. Co. v. Friedman*, 98-cv-2918, 2002 WL 649417, at *1 (N.D. Tex. Jan. 14, 2002) (citing *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995)). *See*, *Turner v. Hayden*, Civil Action No. 15-2282, 2016 WL 6993864, at *1 (W.D. La. Nov. 29, 2016) ("The decision by Magistrate Hornsby to deny Turner's Motion to Compel Discovery is a non-dispositive matter.").

1

## I. Background

Plaintiff alleges that his employment was unlawfully terminated by LSU on February 15, 2016.[5] Prior to his termination, Plaintiff alleges that he was employed by Louisiana State University Health Sciences Center ("LSUHSC") in the Department of Surgery and that for much of his employment with LSUHSC, he worked at the University Medical Center ("UMC")-Lafayette/University Hospital and Clinic ("UHC")-Lafayette.[6]

Per his Petition,[7] Plaintiff asserts that in April 2015 he was told that UHC-Lafayette "had received complaints regarding his communication skills from some members of the UHC-Lafayette medical staff" and that, in response, Plaintiff "informed UHC-Lafayette that he had not been satisfied with the work environment at the hospital for some time and intended to resign from the hospital staff at UHC-Lafayette."[8] Plaintiff alleges that on May 1, 2015, he "submitted a letter to LSUHSC's Associate Dean for Lafayette Affairs resigning from the hospital staff at UHC-Lafayette"[9] and that he was subsequently informed that his resignation from the hospital at UHC-Lafayette would be treated as a resignation from the faculty of LSU's School of Medicine as well.[10] Plaintiff contends that he did not intend to resign from his faculty position and, "in an attempt to clear up the confusion and retain his position on the faculty of the School of Medicine," he rescinded his May 1, 2015 letter of resignation.[11] Plaintiff contends that he was placed on

---

[5] R. Doc. 1-1, ¶ 3.

[6] R. Doc. 1-1, ¶¶ 3-4.

[7] Plaintiff originally filed suit in state court. R. Doc. 1-1. On July 21, 2016, LSU removed the suit to this court pursuant to 28 U.S.C. § 1331.

[8] R. Doc. 1-1, ¶ 8.

[9] R. Doc. 1-1, ¶ 8.

[10] R. Doc. 1-1, ¶ 9.

[11] R. Doc. 1-1, ¶ 10.

administrative leave until the details of his reassignment could be worked out[12] and, "[i]n order to serve his patients and earn an income to provide for himself and his family, Plaintiff immediately established a private medical corporation, obtained his own malpractice insurance, and began practicing independently of LSUHSC in Lafayette."[13] Plaintiff further alleges that by the terms of an October 2015 letter of reassignment, Plaintiff's salary was significantly reduced, he was required to discontinue his clinical practice at Our Lady of Lourdes Medical Center and his private medical practice in Lafayette, and was required to turn over all monies from his outside employment with the Louisiana Organ Procurement Agency ("LOPA").[14]

Plaintiff alleges that the terms of the October 2015 reassignment letter were not the terms he had negotiated and "[b]ecause Plaintiff could not accept these unfair and unjust terms…he declined the reassignment" and was subsequently terminated "for cause" based on his refusal to accept the terms of the reassignment.[15] Per his Petition, Plaintiff seeks, *inter alia*, an "award of actual damages to compensate Plaintiff for all losses he has sustained as a result of the unlawful actions of Defendants."[16] In response to interrogatories, Plaintiff asserted that he is claiming the following losses and expenses: (a) 2015: $90,000 in lost income; $8,600 in self-employment; $5,000 in loss of retirement; and $15,000 in health insurance premiums; (b) 2016: $155,000 in lost income; $25,000 in self-employment; $7,000 in loss of retirement; and $18,000 in health insurance premium; and (c) one time losses of 3988 hours of sick leave and 2962 hours of annual leave.[17]

---

[12] R. Doc. 1-1, ¶ 12.

[13] R. Doc. 1-1, ¶ 14.

[14] R. Doc. 1-1, ¶¶ 22-23.

[15] R. Doc. 1-1, ¶¶ 24 & 26.

[16] R. Doc. 1-1, ¶ 37(b)

[17] R. Doc. 22-3, Plaintiff's response to Interrogatory No. 4. Based on the arguments presented by the parties on the Motion to Compel it appears that "self-employment" refers to additional self-employment taxes incurred by Dr. Frey. *See*, R. Doc. 28, p. 1 ("While the information provided reflects money paid for the services that Dr. Frey rendered, he did not produce information supporting alleged additional expenses which he deducts from this income. For example, Plaintiff claims that he has been damaged by the need to now pay $25,000 in self-employment taxes.").

**II.     Law and Analysis**

LSU seeks to compel production of Plaintiff's 2015 and 2016 income tax returns, and also seeks an award of costs and expenses incurred related to the Motion to Compel. In opposition to the Motion, Plaintiff does not dispute that the tax returns contain relevant information; instead, Plaintiff contends that he has produced more than sufficient information to allow LSU to determine Plaintiff's financial losses and/or Defendant's alleged set-off without additional production of the tax returns.[18]

The Fifth Circuit has explained that "[i]ncome tax returns are highly sensitive documents; courts are reluctant to order their routine disclosure as a part of discovery." *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993) (citing *SEC v. Cymaticolor*, 84 Civ. 4508, 106 FRD 545, 547 (S.D.N.Y. July 8, 1985) (disclosure of tax returns for purposes of discovery ordinarily demands that the requesting party demonstrate relevancy and compelling need)). There appears to be some disagreement within the jurisprudence regarding whether the party moving to compel production of tax returns has the burden to show both relevancy and a compelling need, or whether, once the movant shows relevancy, the burden shifts to the party resisting discovery to establish that the information sought is otherwise readily obtainable. *Compare Southern Filter Media, LLC v. Halter*, Civil Action No. 13-116, 2014 WL 3824023, at * 3 (M.D. La. Aug. 4, 2014) (citing *Butler v. Exxon Mobil Refining and Supply Co.*, Civil Action No. 07-386, 2008 WL 4059867, at * 2 (M.D. La. Aug. 28, 2008) (Because tax returns

---

[18] R. Doc. 25, p. 7 ("Plaintiff acknowledges the relevance of the information and documents that pertain to his claim for lost income from his medical practice as a result of the unlawful termination of his employment by Defendant. However, Defendant has been provided ample information and documents from which it can determine Plaintiff's income for 2015 and 2016 and the amount of any setoff it will presumably assert."). Defendant asserted in its original answer and affirmative defenses that "to the extent plaintiff was paid by LSU during a time period in which he performed no work, LSU is entitled to reimbursement and/or credit for such payment." R. Doc. 8, p. 2. *See also*, Joint Status Report, R. Doc. 9, p. 2 (same).

are highly sensitive, this court "will only compel production where the requesting party 'demonstrates both: (1) that the tax information is 'relevant' to the subject matter of the action; and that there is a 'compelling need' for the information because the information contained in the tax returns is not 'otherwise readily obtainable' through alternative forms of discovery, such as depositions or sworn interrogatory answers.'") and *Landry v. Haye*, 12-cv-2766, 2013 WL 6157920, at * 3 (W.D. La. Nov. 21, 2013) (granting motion to compel production of tax returns based on defendants' need for the documents to explore plaintiff's claim of economic loss and defendants' uncontroverted assertion that the information containing in the tax returns was not obtainable through alternate forms) with *FDIC v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995) (explaining in the context of post-judgment discovery of income tax returns that "[s]ome courts have applied a two-part test in determining whether returns should be produced. The party seeking production of the documents must show their relevance to the inquiry. Then, the burden shifts to the party opposing production to show that other sources exist from which the information contained in the income tax returns may be readily obtained.") (internal citation omitted).

Citing *LeGrand*, LSU argues that "once tax returns are established by the mover as relevant, the burden then shifts to the objecting party…to show that the information on the tax returns is readily obtainable by other sources."[19] *See also, Rafeedie v. LLC, Inc.*, 10-CA-743, 2011 WL 5352826, at * 2 (W.D. Tex. Nov. 7, 2011) ("The Fifth Circuit has suggested that the party seeking to discover tax returns must show the relevance of the tax returns, and then the burden shifts to the party opposing production to show other sources exist from which the information contained in the returns may be readily obtained."). Regardless of which approach is adopted,

---

[19] R. Doc. 22-9, p. 3.

5

sufficient information has been provided to establish that the information sought via Plaintiff's tax returns has been provided to LSU through other sources.

LSU argues that Plaintiff "has only produced vague responses and incomplete document production."[20] LSU further argues that "Dr. Frey has produced little information regarding his compensation from 2015 to present date, consisting of some 1099 forms, but no payroll check stubs, W-2 or Schedule K-1 forms."[21] With respect to 2016, LSU complains that "neither the affidavit nor Schedule C reflect all possible sources of income claimed by Dr. Frey on his tax returns."[22]

Plaintiff has stated in response to interrogatories that for the time period of May 1, 2015 through the present date, he was employed only by his own company, Frey Surgical, LLC ("Frey Surgical").[23] Plaintiff has produced Schedule C "Profit and Loss From Business" forms for Frey Surgical for both 2015[24] and 2016 years.[25] It appears that LSU issued follow up questions regarding the 2016 Schedule C to obtain additional information regarding certain expenses claimed on that form.[26] Plaintiff also submitted an affidavit from a CPA, Elizabeth Moreau, who prepared the 2016 federal income tax return for Frey Surgical.[27] Per Ms. Moreau's affidavit, the 2016 Schedule C "accurately reflects the 2016 income of Frey Surgical" based on the records provided by Frey Surgical for the purpose of preparing the 2016 return, and the records provided to Ms.

---

[20] R. Doc. 22-9, p. 7.

[21] R. Doc. 22-9, p. 7.

[22] R. Doc. 22-9, p. 7.

[23] R. Doc. 22-2, Plaintiff's response to Interrogatory No. 6.

[24] R. Doc. 25-2.

[25] R. Doc. 22-5.

[26] *See*, R. Doc. 22-5, Plaintiff's responses to Interrogatories 11-16. LSU additionally complains that "Dr. Frey's responses to other interrogatories regarding expenses and income have been limited to single sentence responses." R. Doc. 22-9, p. 7. Presumably, Defendant is referring to Plaintiff's responses to Interrogatories 11-16. Plaintiff's responses to those interrogatories, while short, were sufficient.

[27] R. Doc. 22-5.

6

Moreau "reflected that the income earned by Frey Surgical, LLC was earned by Daniel J. Frey, M.D. only."[28] In addition to these documents, Plaintiff produced multiple Form 1099s reflecting miscellaneous income for 2015[29] and 2016.[30] Plaintiff has also produced his W-2 Wage and Tax Statements from LSUHSC and notes that "for much of 2015, Plaintiff was still employed by LSU and LSU would, therefore, have any and all records reflecting what Plaintiff earned through LSU for that year."[31] With respect to Defendant's complaint regarding additional information from 2016, Plaintiff explains that because he was self-employed with Frey Surgical, no payroll stubs, W-2s, or Schedule K-1 forms were issued.[32] Regarding Plaintiff's additional sources of income, Plaintiff explains that he has a few rental homes and some investments, which he contends are not relevant to his claimed damages and finally points out that he and his spouse file jointly and there is no basis for Defendant to obtain information regarding what his wife earns.[33]

In reply, LSU does not respond to any of the specific assertions set forth in Plaintiff's opposition. LSU provides no explanation regarding why income derived from Plaintiff's rental

---

[28] R. Doc. 22-5, ¶¶ 4-5. Plaintiff asserts that he submitted this affidavit to Defendant based on "an agreement pursuant to which Defendant agreed that in lieu of Plaintiff's producing his 2016 tax return, it would accept an affidavit from Plaintiff's CPA. R. Doc. 25, p. 4. In a June 12, 2017 letter, counsel for Defendant stated that "[b]ecause we are seeking evidence of all of Dr. Frey's earnings as a result of work that he provides, regardless of the type, we will accept an affidavit from the CPA stating: 1. his qualifications to make this affidavit; 2. the 2016 Schedule C of Frey Surgical LLC...represents all compensation paid in the calendar year 2016 on account of the work or services performed by Dr. Daniel J. Frey; and 3. all compensation paid to Frey Surgical LLC was paid on account of work performed by Daniel J. Frey and no other person." R. Doc. 25-4.

[29] R. Doc. 25-1 (2015 Form 1099 from LOPA).

[30] R. Doc. 22-8 (2016 Form 1099s from, *inter alia*, various law firms and insurers).

[31] R. Doc. 25, p. 5.

[32] R. Doc. 25, p. 6 ("Plaintiff has not produced any payroll stubs because Plaintiff is self-employed through Frey Surgical, LLC....For the same reason, Plaintiff received no W-2s and, therefore, has none to produce to LSU for 2016....Finally, Plaintiff has not provided any Schedule K-1 forms because...such forms are reserved for income earned by the taxpayer from partnerships. Plaintiff does not – and did not at any time in the past – practice medicine as a partner in or an employee of any partnership.").

[33] R. Doc. 25, p. 7 ("LSU is only entitled to information and documents regarding the income Plaintiff has earned <u>through his medical practice</u> since his unlawful termination, nothing more."); ("LSU has cited no authority that would even arguably allow it to obtain information regarding what Plaintiff's wife earns, what their total combined income is, and, as noted above, the amount of any additional income they may earn from sources unrelated to his medical practice.").

homes or investments would be relevant, or why it is entitled to information regarding Plaintiff's wife's income. Instead, Defendant explains that "[w]hile the information provided reflects money paid for the services that Dr. Frey rendered, he did not produce information supporting alleged additional expenses which he deducts from this income."[34] Specifically, LSU contends that while Plaintiff has itemized his damages to include $25,000 in self-employment taxes, "[t]he only place to obtain information on whether Dr. Frey paid more self-employment taxes as a result of his termination is from a tax return as his own forensic accounting expert, John Levendis, testified to at his deposition…."[35] LSU contends that "[w]hile Plaintiff asserts that he has provided evidence of income from other sources, he has not – and cannot – provide evidence of lost taxes without tax returns."[36]

First, LSU has not explained why an order should be issued compelling production of Plaintiff's tax returns in light of the fact it appears that the parties reached an agreement that Plaintiff's accountant would provide an affidavit in lieu of producing the tax returns.

Further, in support of its position that Plaintiff's tax returns are the only source of the information regarding Plaintiff's self-employment taxes, LSU relies on the deposition testimony of Plaintiff's economic expert, Dr. John Levendis.[37] During his August 23, 2017 deposition, Dr. Levendis was asked where he would "typically expect to find" information regarding the extra taxes Plaintiff purportedly had to pay following his termination.[38] In response to that question, Dr. Levendis stated that "[e]xtra taxes I could get from his income tax returns or his filings."[39]

---

[34] R. Doc. 28, p. 1.

[35] R. Doc. 28, pp. 1-2.

[36] R. Doc. 28, p. 2.

[37] R. Doc. 28-1.

[38] R. Doc. 28-1, pp. 98:20-99:3.

[39] R. Doc. 28-1, p. 99:2-3.

8

Thus, contrary to Defendant's suggestion, Dr. Levendis' testimony does not appear to support the position that Plaintiff's tax returns are the *only* source of the information sought. Moreover, if this is truly the only information Defendant purports to need, such information could have been provided by some other method (for example, in the sworn affidavit from Plaintiff's accountant).[40] *See*, *Southern Filter Media*, 2014 WL 3824023, at * 4 ("SFM has not demonstrated that it cannot readily obtain the information sought—Halter's relationship to the SBE Defendants—through other methods of discovery, such as interrogatories and deposition questions."); *Gondola v. USMD PPM, LLC*, 15-cv-411, 223 F.Supp.3d 575, 589 (N.D. Tex. May 27, 2009) (sustaining plaintiffs' objection to producing tax returns in part and requiring plaintiffs to either sign an IRS authorization form or provide copies of "any 1099s for income after their termination by Defendant and a copy of any documents reflecting any rental income, income from any self-employment, or distributions from any 401(k) or other retirement or investment account after their termination by Defendant" in response to defendant's position that income from any source related to plaintiffs' claim for back and front pay and plaintiffs' duty to mitigate their damages and noting that as a general matter, information regarding plaintiffs' additional employment or non-wage income could be gleaned from other sources such as 1099s) (citing *Jackson v. Unisys, Inc.*, No. 08-3298, 2010 WL 10018, at *2-3 (E.D. Pa. Jan. 4, 2010) ("As W–2s do not contain 'substantial irrelevant' confidential information such as investment income, spousal income, etc., they are a preferable

---

[40] The only item of information LSU definitively points to in its briefing as not having received is information regarding Plaintiff's claim to have incurred additional self-employment taxes. The focus of LSU's contemporaneous correspondence regarding Plaintiff's financial information appears to have been related to insuring that all income Dr. Frey received from work was accounted for. R. Doc. 25-4 ("Because we are seeking evidence of all of Dr. Frey's earnings as a result of work that he provides, regardless of the type, we will accept an affidavit from the CPA …."). The undersigned notes that Plaintiff's discovery responses wherein the self-employment taxes are claimed as an item of damages are dated March 3, 2017. R. Doc. 22-3, p. 11. The correspondence from LSU's counsel referencing an agreement to have Plaintiff's CPA provide certain information is dated June 12, 2017. R. Doc. 25-4. Thus, LSU was aware of Plaintiff's claims regarding additional self-employment taxes well before the affidavit was provided. If that issue was of the critical importance that LSU now claims it to be, it seems that it would (or could) have been included in the information sought via affidavit.

form of discovery.' In the interest of balancing Plaintiff's privacy interests against the Federal Rules' call for broad discovery, the Court finds that Plaintiff's W–2s will suffice for the information sought ... in the income tax returns.")).

In any event, and more generally speaking, Plaintiff has provided a large amount of financial/income related information via responses to LSU's discovery requests including, *inter alia*, a sworn affidavit from Plaintiff's CPA in accordance with an agreement between the parties. While the parties agree that information contained on Plaintiff's tax returns is relevant, Plaintiff has provided extensive financial information to LSU already. Without some sort of specific showing that something more is needed, and in light of the information provided already, the undersigned is unable to find that there is a compelling need for production of Plaintiff's 2015 and 2016 tax returns. *See*, *Southern Filter*, 2014 WL 3824023, at 3.

### III. Conclusion

For the reasons set forth herein, the Motion to Compel Production of Income Tax Returns for Years 2015 and 2016 filed by Board of Supervisors of Louisiana State University and A&M College and Louisiana State University Health Sciences Center – New Orleans[41] is **DENIED**. Movant's request for fees and costs is **DENIED AS MOOT**. *See*, Fed. R. Civ. P. 37(a)(5)(A).

Signed in Baton Rouge, Louisiana, on November 14, 2017.



**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[41] R. Doc. 22.